IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CASE NEW HOLLAND, INC., and CNH AMERICA LLC, <br><br>                 Plaintiffs, <br><br> v. <br><br> EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, and CHETAN PATEL, Federal Investigator, <br><br>                 Defendants. | Civil Action No. 13- cv-01176 <br><br><br> COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## COMPLAINT

Plaintiffs CASE NEW HOLLAND, INC. and CNH AMERICA LLC (collectively "CNH") assert this Complaint against the EQUAL EMPLOYMENT OPPORTUNITY COMMISSION ("EEOC"), and CHETAN PATEL, Federal Investigator ("PATEL"), and for their claims state as follows:

## <u>INTRODUCTION</u>

1.  Plaintiffs bring this action for declaratory and injunctive relief as a result of the Defendants' arbitrary and capricious, and unconstitutional sending of 1330 emails to CNH *business* email domains, including to the business email addresses of hundreds of managers and other individuals with arguable authority to bind CNH with evidentiary admissions, in order to solicit plaintiffs to commence a class action against CNH. Defendants provided no prior notice of this business email distribution to CNH, and thus provided no opportunity to CNH to be heard before the mass distribution occurred.

## NATURE OF THIS ACTION

2.      The First, Second and Third Counts arise under the Administrative Procedure Act, and are asserted against Defendants EEOC and PATEL.

3.      The Fourth and Fifth Counts arise under the Fourth and Fifth Amendments to the United States Constitution, and are asserted against Defendants EEOC and PATEL.

## PARTIES

4.      Plaintiff Case New Holland Inc. is headquartered at 700 State Street, Racine, Wisconsin 53406.  Case New Holland Inc. is a holding company with no employees.  Case New Holland Inc. is the owner of its subsidiary CNH America LLC.

5.      Plaintiff CNH America LLC is headquartered at 700 State Street, Racine, Wisconsin 53406.  CNH America LLC employs approximately 10,000 people (approximately 6,000 hourly and 4,000 salaried) in the United States, and provides substantial wages to these employees, as well as substantial benefits to spouses and dependents of these employees.

6.      Defendant EEOC is an administrative agency of the United States and has authority to conduct investigations of age discrimination charges.  The EEOC is headquartered at 131 M Street, NE, Washington, DC 20507.

7.      Defendant PATEL is the Federal Investigator charged with investigating EEOC Director's Charge No. 530-2011-01697.  Mr. Patel is employed by the EEOC and assigned to the Philadelphia District Office of the EEOC.  His business address is 10 South Howard Street, 3d Floor, Baltimore, Maryland 21201.

## JURISDICTION AND VENUE

8.      Jurisdiction is conferred on this Court under 28 U.S.C. § 1331; 28 U.S.C. §§ 2201, 2202; and 5 U.S.C. §§ 702,703, because the matters in controversy arise under the Constitution and laws of the United States of America.

9.      Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1391(e) because the EEOC is a resident of the District of Columbia, and because PATEL is an employee of the EEOC and is sued in his official capacity.  The EEOC and PATEL are within the scope of the territorial limits of this Court for service of a summons.

## BACKGROUND

### A.     The EEOC Launches a Massive Investigation

10.     By letter dated March 29, 2011, the Philadelphia District Director of the EEOC launched a nation-wide review of CNH and allegedly affiliated business entities under the federal Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 *et seq*., and issued related Requests for Information of CNH Human Resource data systems.

11.     Also by letter dated March 29, 2011, PATEL issued a demand for information on CNH Human Resource data systems.

12.     The scope of the EEOC and PATEL investigation was overwhelmingly expansive:

The EEOC's March 29, 2011 letter stated in pertinent part:

This is to inform you that the Commission has scheduled an investigation of your organization, to include but not limited to the following:

Fiat Industrial, S.P.A.
CNH Global
Case New Holland, Inc.
BLI Group, Inc. USA

Blue Leaf I.P., Inc. USA
Case Brazil Holdings, Inc. USA
Case Construction Equipment, Inc. USA
Case Credit Holdings Limited USA
Case Dealer Holding Company LLC USA
Case Equipment Holdings Limited USA
Case Equipment International Corporation USA
Case IH Agricultural Equipment, Inc. USA
Case India Limited USA
Case International Marketing, Inc. USA
Case LBX Holdings, Inc. USA
Case New Holland Inc. USA
CNH America LLC USA
CNH Capital America LLC USA
CNH Capital Equipment Loan and Lease Facility LLC USA
CNH Capital Insurance Agency Inc. USA
CNH Capital Finance LLC USA
CNH Capital LLC USA
CNH Capital Operating Lease Equipment Receivables LLC USA
CNH Capital Receivables LLC USA
CNH Engine Corporation USA
CNH Receivables LLC USA
CNH Wholesale Receivables LLC USA
Farmers New Holland, Inc. USA
Fermec North America, Inc. USA
Fiatallis North America LLC USA
Flagship Dealer Holding Company, LLC USA
HFI Holdings, Inc. USA
International Harvester Company USA
New Holland Credit Company, LLC USA
New Holland Excavator Holdings LLC USA
Pryor Foundry, Inc. USA
Sunrise Tractor & Equipment Inc. USA
Jackson New Holland, Inc. USA
Mid State New Holland, Inc. USA
Northside New Holland, Inc. USA
Kobelco Construction Machinery America LLC USA
Ridgeview New Holland, Inc. USA
CNH Reman LLC USA
Employers' Health Initiatives, LLC USA

The investigation will be conducted under the authority of Section 7 of the ADEA and Section 1626.15 of the Commission's Procedural Regulations. Investigator Chetan Patel will be contacting you shortly to obtain preliminary

information and/or to schedule an appointment to visit your facilities. The investigation will involve some or all of the following steps:

An initial conference may be conducted with an official of your firm to acquire general information regarding your operations, employment policies and practices, records systems, etc.;

You will be asked to provide information or reports from data contained in your records as required by Section 1626.15;

A tour of your facilities may be made;

The investigator may examine, copy and/or transcribe records or submit a written request for information regarding:

a.    coverage under the Act;

b.    hiring, promotion, discharge, layoff, and recall policies;

c.    job-ranking criteria (*e.g*., job evaluation plans, job analyses, job descriptions, wage and salary schedules, *etc*.);

d.    merit, seniority, and incentive systems and training programs;

e.    collective bargaining agreements;

f.    payroll information (employee names, addresses, earnings, work schedules, actual hours worked, etc.);

g.    fringe benefit packages (holiday, vacation and sick leave, health insurance, pension plans, etc.);

h.    individual employee and/or job applicant data (job applications, test scores, job and wage histories, performance appraisals, etc.); and/or

i.    any other records deemed to be relevant and necessary by the Investigator in determining your firm's status of compliance.

The investigator may interview selected management and nonmanagement employees;

At the completion of the investigation, the investigator will make a recommendation of the appropriate disposition of the case.

<u>PATEL's March 29, 2011 letter stated, in pertinent part</u>:

We are interested in learning about the components of your current Human Resource Information System (HRIS) or Enterprise Resource Planning (ERP) software, or other software architecture, whether maintained by you or another entity, which contain computerized or machine-readable information on personnel activities. This type of system or system component would include, but not be limited to applicants, hiring, promotions, job analyses and evaluations, performance evaluations, employment and educational history while employed at Respondent, employment and educational history at the applicant stage or prior to being hired at Respondent, amounts of pay, adjustment to pay, benefits, work assignments, adjustments to work assignments, payroll and layoffs/discharge/terminations.

The system or software components are usually called tables or files. For each relevant system/software/program, please provide the following information:

a.      The name and version of the system/software and relevant components.

b.      The date on which the company started using the relevant system/software. Name the predecessor system/software, if any.

c.      Please estimate the number of records in each relevant HRIS system.

d.      Describe the categories of any employees that have been excluded from the HRIS system or HRIS component.

e.      The name and commonly understood description of each data field or variable on the relevant HRIS component(s). The "key variable" or unique identifier across components should be defined. (Please provide in an EXCEL or similar spreadsheet.)

f.      The definition of all codes used in each HRIS system or component identified here. (Please provide in an EXCEL or similar spreadsheet.)

g.      If data from the HRIS system cannot be written into a comma delimited file (".csv"), a data base file (".dbf") or other commonly used software (specifically, Excel, MS ACCESS, dBase, SAS, STATA or SPSS) provide file documentation, including file layout and field formats. That is, specify the beginning field and length of each variable, whether the variable is alpha or numeric, and the format of each variable such as date formats or numeric formats indicating decimals or "packed" data.

h.      If the HRIS system or components of the system are maintained by an outside organization, please list the relevant HRIS system or components with the name and address of each relevant outside organization and the inclusive dates of the contract or arrangement.

In addition, please supply complete personnel folders for three of your current employees.

13.     On June 21, 2011, the EEOC and PATEL requested yet more information, including a listing of tables and fields from CNH data systems.  These Requests encompassed records regarding hiring, training, and changes in employment status for all employees of the 44 different entities identified by the EEOC.  The Requests were not limited by position, type of position, or even field of employment, even though CNH employs people in a wide variety of fields, including, among others, fields involving manufacturing, sales, office administration, finance and executive management.

14.     On November 2, 2011, CNH representatives met with representatives of the EEOC and with PATEL to discuss the EEOC's data requests.

15.     On November 21, 2011, the EEOC and PATEL requested yet more data from CNH systems, including many tables and fields from CNH HR and applications systems. The November 21, 2011 Request closed with this statement by the EEOC and PATEL: "Once we receive the above requested documents, please have the following two individuals available for an interview:  Heidi Miller, VP of Global Talent, and Linda Knoll, Senior VP of Global Talent."  CNH reasonably relied on this representation to believe that no interviews of its employees would be undertaken by the EEOC or PATEL without word from the EEOC and PATEL that they had reviewed the referenced documents and were ready to begin interviews that CNH could coordinate on a joint basis with the EEOC.

**B.     Cooperating with the EEOC, CNH Produces over 600 Megabytes of Data**

16.     On January 5, 2012, CNH produced the information the EEOC and PATEL requested. CNH's production included approximately 300 documents totaling 5,707 pages

(exclusive of Excel spreadsheets), and over 600,000 electronic records from CNH databases, totaling approximately 66,630 pages of documents.  The size of the production was over 600 megabytes of information.  Paragraph 10 of the January 5, 2012 Response to the EEOC and PATEL stated:  "Please review the information provided in and with this letter.  Once the EEOC represents that the information provided is responsive, we can discuss with you interviews of Ms. Miller and Ms. Knoll."

> **C.     After 18 Months of Radio Silence, and Without Notice, the EEOC Enters CNH Business Servers, Trolling for Plaintiffs to Commence a Class Action against CNH**

17.     Between January 5, 2012 and June 5, 2013, the EEOC and PATEL did not communicate further with CNH -- not one phone call, email or letter was sent by the EEOC or PATEL to CNH during this period of time (other than an email from PATEL with his new business address in Baltimore).

18.     On the morning of June 5, 2013, the EEOC and PATEL commenced a mass email and web-linked inquiry to 1,330 CNH (or affiliate) business email addresses of CNH employees located throughout the United States and Canada.  Over 200 recipients of the EEOC and PATEL mass email were CNH (or affiliate) managers or others who, arguably have the authority to bind CNH in a court of law.  The EEOC and PATEL delivered their emails to 1,330 CNH (or affiliate) business email Inboxes at about 8:00 a.m. Eastern Time on Wednesday June 5, 2013, meaning that well over 1,000 CNH employees were greeted on a Wednesday morning, immediately after they logged into their business computers, with an email inquiry from the United States government about their employer, of which their employer had no prior notice whatsoever.

19.     The EEOC and PATEL email began:  "The United States Equal Employment Opportunity Commission (The EEOC) is conducting an investigation into allegations that FIAT INTERNATIONAL, CNH Global or one of its subsidiaries discriminated against job applicants and current and former employees from January 1, 2009 to present."  Neither EEOC nor PATEL stated in their email that the investigation was limited to age discrimination or that no finding of discrimination had yet been made.  The EEOC and PATEL email stated instead that they were undertaking "an official inquiry" to determine whether anyone's rights "may have been violated."  The EEOC and PATEL email encouraged CNH employees to respond to the email, by stating that "federal law" prohibits any current or former employer retaliation "because you have participated in a federal EEOC investigation."

20.     The EEOC and PATEL email contained a link to a series of questions that the EEOC and PATEL intended each email recipient to access and complete.

21.     The EEOC and PATEL Internet link stated, when clicked:  "Please complete and submit this electronic questionnaire as soon as possible."

22.     The questionnaire inquiry was biased; it was not a fair survey.  On the subject of age discrimination, its questions were leading, and suggested answers adverse to the interests of CNH.  It demanded, for example:

> "At any point during the application process did anyone from Fiat or CNH make any comments about your age?"

> "At any point during the application process did anyone from Fiat or CNH make any comments about the age of applicants/employees?"

23.     The web-based questions also were confusing, and not worthy of an unbiased investigation.  After asking if the age of the applicant was raised during an application

process, the link made this inquiry:  "At any point during the application process did anyone

from FIAT or CNH make any other *age-related comments*?"  (Emphasis added.)  The web-

based questionnaire then asked the recipient for an explanation of any "age-related

comments."  The Internet inquiry did not define "age-related comments," leaving the

recipient to use his or her own idiosyncratic definition, regardless of the meaning of the

phrase under the ADEA.

24.      The web-based link made no mention of the right of the recipient not to

complete the questionnaire.

25.      The Internet inquiry closed by demanding birthdate, address and phone

number "in case we need to contact you."

26.      The EEOC and PATEL also delivered their email to the private email

addresses of an undetermined number of individuals employed or formerly employed by

CNH.  Some or all of these individuals, the EEOC could argue, have the authority to bind

CNH in a court of law.

**D.      The EEOC's Spontaneous Disruption of CNH's Normal Business
          Operations**

27.      The EEOC and PATEL mass business email and Internet link disrupted

normal CNH business operations, without any warning to CNH.

28.      A "Federal Investigation" of one's employer is alarming.  It suggests

wrongdoing (when none exists).  It causes employees to become concerned about their

employment livelihood.

29.      A "Federal Investigation" by business (or any) email prompts employees,

impulsively, to question what other information the federal government already possesses

about them.  Recipient employees question, reflexively, whether the federal government is

on a mission to collect data on them, and excitedly speculate about the purpose of the

collection efforts.

30.     Mass business emails with Internet links that show up in employee business

Inboxes divert attention from business operations, and undermine productivity.

31.     The EEOC and  PATEL mass business email and Internet link disrupted the

CNH employer-employee relationship.  The email implicitly communicated to CNH

employees that their employer is being cut out of a federal government inquiry.  The email

also communicated that the recipient employees should cease their work for CNH to the

extent necessary to answer the federal government's questions, regardless of legitimate work

demands or any legitimate concerns of their employer.

**E.      The EEOC's Refusal to Provide the Relief Demanded by CNH**

32.     On June 5 and 6, 2013, CNH requested of the EEOC Trial Attorney assigned

to the investigation:  (a) the business email distribution list, (b) a statement of the purpose of

the mass distribution, (c) the legal basis for the disruption of legitimate business operations,

without notice to CNH and an opportunity to be heard, and (d) a statement whether the

EEOC had considered in advance the disruption its emails would cause.  This request was

not honored.

33.     On June 10, 2013, CNH voiced opposition to the June 5, 2013 email campaign

to the Regional Attorney of the Philadelphia District office of the EEOC.  CNH again

requested the information noted in the preceding paragraph 32.  This request was simply

referred without response to the Philadelphia District Director.

34.     On June 14, 2013, CNH voiced opposition to the June 5, 2013 email campaign to each of the five Commissioners of the EEOC and the Director of its Office of Field Programs, and again requested the information requested of the EEOC on June 5 and 6, 2013.  Again, the request was not honored.

35.     On June 24 and 26, 2013, CNH representatives spoke with the Director of the EEOC Office of Field Programs, and a Deputy Director, about this controversy, but were unable to resolve their differences.  In particular, the EEOC:

a.      left open the possibility that it might undertake another mass email distribution to CNH employees at their CNH business email addresses;

b.      refused to provide to CNH the responses to the June 5, 2013 mass business email distribution or even to identify the number of responses;

c.      refused to agree not to use the responses to the June 5, 2013 mass business emails against CNH at some future time; and

d.      refused to agree not to turn over the June 5, 2013 mass business email responses to third parties.

36.     During the June 26, 2013 conference, the EEOC representatives acknowledged that those CNH employees who received June 5, 2013 emails at their business email addresses had not previously contacted the EEOC to complain about CNH.  In other words, the EEOC acknowledged that none of the email recipients had asserted age discrimination charges against CNH.

37.     On June 13, 2013, the Chief of Staff of Congressman Joseph R. Pitts of Pennsylvania's 16th Congressional District corresponded with the Philadelphia District Director of the EEOC.  That correspondence attached a letter from Congressman Pitts to the District Director and asked these questions:

•       What precipitated the EEOC investigation of CNH?

- From January 5, 2012 until June 5, 2013, CNH heard nothing from the EEOC, prompting it to believe the EEOC's investigation was closed. Is it normal EEOC protocol for the EEOC to be silent for so long and then take action without notice?

- Is sending an email to 1,169 employees at their business email addresses normal EEOC practice? If yes, please provide the number of times this tactic has been used by the EEOC in the past three years.

- Can you appreciate the internal disruption to employer-employee relations that an email of this nature creates? Does the EEOC consider the implications for CNH of this type of email?

- Is it normal EEOC procedure not to alert the company that the email is being sent through its business email servers?

- Would the EEOC please provide the legal, administrative or internal procedure manual citation that allows it to distribute this type of email.

38.    On July 9, 2013, the EEOC District Director responded to Congressman Pitts's inquiry. He characterized the EEOC email tactic as "efficient."

39.    On July 10, 2013, the EEOC Director of its Office of Field Programs corresponded with CNH, as a follow-up to the conference on June 26, 2013. The Director there stated that the purpose of the mass business emails was "for identifying potential class members." The EEOC made no finding of age discrimination against CNH before sending emails to the business Inboxes of 1,169 CNH employees to attempt to find plaintiffs who would sue CNH in a class action.

40.    One business goal of the EEOC is to maximize monetary settlements associated with its investigations. To that end, the EEOC proudly publicizes its monetary settlements.

41.     Class actions often cause defendants to settle the action by paying substantial sums of money, regardless of the merits of the controversy, simply because the cost of defense, including especially the cost of class action discovery, is so great.

42.     The Supreme Court has stated:  "Faced with even a small chance of a devastating loss, defendants will be pressured into settling questionable claims."  *AT&T Mobility LLC v. Concepcion,* 131 S. Ct. 1740, 1752 (2011).

43.     The Supreme Court also has stated:  "[T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases, before reaching [summary judgment]."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007).

44.     On July 17, 2013, CNH corresponded again with the EEOC Commissioners asking that they comply with the CNH requests noted in its June 14, 2013 letter to them.  The July 17, 2013 correspondence provided the Commissioners with the current status of this controversy, and asked that the EEOC comply with CNH's requests by July 22, 2013, in order to avoid litigation.  No such compliance was forthcoming.

45.     The EEOC has never, before June 5, 2013, sent out emails through business email servers, without any prior notice to the respondent employer, in an attempt to unearth plaintiffs against the employer.  The June 5, 2013 email campaign broke new investigatory ground for the EEOC.

### FIRST CLAIM FOR RELIEF
### APA -- NO AUTHORIZING RULE OR REGULATION
### (Against Defendants EEOC and PATEL)

46.     Plaintiffs incorporate paragraphs 1 through 45 by reference, as though fully set forth in this paragraph.

47.     The ADEA provides that the EEOC may issue rules and regulations that it considers "necessary or appropriate."  29 U.S.C. § 628.

48.     The EEOC has issued a regulation on its procedure for the enforcement of the ADEA.  That rule provides, in pertinent part, that the Commission "may . . . (3) interview employees; . . . [and] (6) subpoena witnesses."  29 C.F.R. § 1626.15(a).  The EEOC has issued no rule or regulation permitting mass business emails to business email domains without prior notice to the employer, employment agency or labor organization being investigated by the EEOC.  Indeed, its current regulation contemplates an "interview" or "subpoena" of employees, and not a mass business email soliciting class action plaintiffs adverse to CNH.

49.     The EEOC has not issued any rule or regulation allowing a mass business email inquiry of employees through the use of an employer's computer network.

50.     The action by the EEOC and PATEL to distribute the mass business email and Internet link to CNH employees, including managers, in the absence of a rule or regulation permitting said distribution, violates the Administrative Procedure Act (the "APA") prohibition against federal agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

51.     The action by the EEOC and PATEL to distribute the mass business email and Internet link to CNH employees, including managers, in the absence of a rule or regulation permitting said distribution, violates the APA prohibition against federal agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(C).

52.     The action by the EEOC and PATEL to distribute the mass business email and Internet link to CNH employees, including managers, in the absence of a rule or regulation permitting said distribution, violates the APA prohibition against federal agency action that is "without observance of procedure required by law."  5 U.S.C. § 706(2)(D).

## SECOND CAUSE OF ACTION
## APA -- STATUTORY AND CONSTITUTIONAL VIOLATIONS
### (Against Defendants EEOC and PATEL)

53.     Plaintiffs incorporate paragraphs 1 through 52 by reference, as though fully set forth in this paragraph.

54.     The ADEA authorizes EEOC "investigations."  29 U.S.C. § 626(a).

55.     The EEOC mass business email campaign was biased, and had the intent and effect of trolling for class action plaintiffs who would sue or become a party opponent to CNH, and thus was not a legitimate ADEA "investigation."

56.     The ADEA authorizes investigations, moreover, only to the extent that they are "necessary or appropriate" for the administration of the ADEA.  29 U.S.C. § 626(a).

57.     The mass business email and Internet link inquiry was neither "necessary" nor "appropriate."

58.     The action by the EEOC and PATEL to distribute the mass business email and an Internet link to CNH employees, including managers, through the unauthorized use of the computer network of CNH, constituted a cyber-trespass to chattel and an invasion of privacy.

59.     The action by the EEOC and PATEL to distribute the mass business email and Internet link to CNH employees, including managers, through the unauthorized use of the computer network of CNH, constituted an unreasonable search and seizure in violation of the

Fourth Amendment to the United States Constitution and in violation of the "takings" clause of the Fifth Amendment to the United States Constitution.

60.     The action by the EEOC and PATEL to distribute the mass business email and Internet link to CNH employees, including managers, through the unauthorized use of the computer network of CNH, was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," in violation of 5 U.S.C. § 706(2)(A).

61.     The action by the EEOC and PATEL to distribute the mass business email and Internet link to CNH employees, including managers, through the unauthorized use of the computer network of CNH, was "contrary to constitutional right, power, privilege, or immunity," in violation of 5 U.S.C. § 706(2)(B).

62.     The action by the EEOC and PATEL to distribute the mass business email and Internet link to CNH employees, including managers, through the unauthorized use of the computer network of CNH, was "in excess of its statutory jurisdiction, authority, or limitations, or short of statutory right," in violation of 5 U.S.C. § 706(2)(C).

**THIRD CLAIM FOR RELIEF**
**APA -- VIOLATION OF EEOC COMPLIANCE  MANUAL**
**(Against Defendants EEOC and PATEL)**

63.     Plaintiffs incorporate paragraphs 1 through 62 by reference, as though fully set forth in this paragraph.

64.     The EEOC's written investigation policies require that an employer be allowed to have a spokesperson or attorney present during any interview of management employees.

65.     The EEOC Compliance Manual, at Section 23.6(a), provides:  "On site interviews should be conducted with the prior knowledge and consent of the respondent. . . .

The respondent may be notified of the persons to be interviewed on site either before or during the on site visit."

66.     The action by the EEOC and PATEL to distribute the mass business email and Internet link to CNH employees, including managers, through the unauthorized use of the computer network of CNH, was conducted without the prior knowledge and consent of CNH.  CNH was not notified of the persons to whom the June 5, 2013 mass business email and Internet link were delivered either before, during or even after the email distribution.

67.     The action by the EEOC and PATEL to distribute the mass business email and Internet link to CNH employees, including managers, through the unauthorized use of the computer network of CNH, violated EEOC Compliance Manual Section 23.6(a).

68.     The EEOC Compliance Manual Section 23.6(c) states:  "It is a respondent witness's right to have a spokesperson or counsel present during his/her own interview if s/he desires.  However, do not allow respondent's spokesperson or attorney to attend interviews of non-management employees . . . . If respondent refuses to allow interviews without its attorney present, attempt to reschedule the interviews at an off site location by contacting each employee *at home*."  (Emphasis added.)

69.     The action by the EEOC and PATEL to distribute the mass business email and Internet link to CNH employees, including managers, through the unauthorized use of the computer network of CNH, violated EEOC Compliance Manual Section 23.6(c) by not providing CNH with the right to demand to be present during each and every mass email and related Internet question.

70.     The EEOC Compliance Manual at Section 23.6(c)(1) states:  "With regard to interviews of management employees, respondent's spokesperson or attorney may be

present, provided that the particular management employee, after counseling, has not elected the confidentiality option . . . ."

71.     Pennsylvania Rule of Professional Conduct 4.2 states:  "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter…."  The comments to Rule 4.2 state that in the case of a represented organization, communications are prohibited with a constituent of the organization:  (i) who supervises, directs, or regularly consults with the organization's lawyer concerning the matter; (ii) who has authority to obligate the organization with respect to the matter; or (iii) whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability.  *Penn. R. Prof'l Conduct* 4.2, Cmt. 7.  Rule 8.4(a) states that it is "professional misconduct" for a lawyer to "violate or attempt to violate the [Rules], knowingly assist or induce another to do so, or do so through the acts of another."

72.     EEOC counsel in Pennsylvania undertook a legal analysis to determine the legitimacy of a mass business email inquiry as an EEOC investigatory technique.  EEOC counsel thus assisted or induced PATEL to distribute the mass emails to CNH business email addresses in violation of the governing Rules of Professional Conduct.

73.     The action by the EEOC and PATEL to distribute the mass business email and Internet link to CNH employees, including managers and others who might have the authority to bind CNH in a court of law, through the unauthorized use of the computer network of CNH, violated EEOC Compliance Manual Section 23.6(c)(1) by not providing CNH with the right to demand to be present during the mass email and Internet questioning of hundreds of its managers who received the emails at work.

74.     The EEOC Compliance Manual at Section 23.12 states:  "When it is not possible or practical to interview a witness in person, conduct the interview by telephone or mail.  When conducted by telephone, mail the original Form 133 (along with the Confidentiality Election Statement if the witness has elected the confidentiality option) to the witness's home address for signature."

75.     The action by the EEOC and PATEL to distribute the mass business email and Internet link to CNH employees, including managers, through the unauthorized use of the computer network of CNH, violated EEOC Compliance Manual Section 23.12 by not proffering legitimate questions through the telephone or the United States mail to home, and not business, addresses.

76.     The action by the EEOC and PATEL to distribute the mass business email and Internet link to CNH employees, including managers and others who might have the authority to bind CNH in a court of law, in the absence of a rule or regulation permitting said distribution, violates the APA prohibition against federal agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law."  5 U.S.C. § 706(2)(A).

77.     The action by the EEOC and PATEL to distribute the mass business emails and Internet link to CNH employees, including managers and others who might have the authority to bind CNH in a court of law, through the unauthorized use of the computer network of CNH, was "contrary to constitutional right, power, privilege, or immunity," in violation of 5 U.S.C. § 706(2)(B).

78.     The action by the EEOC and PATEL to distribute the mass business email and Internet link to CNH employees, including managers and others who might have the

authority to bind CNH in a court of law, through the unauthorized use of the computer network of CNH, was "without observance of procedure required by law," in violation of 5 U.S.C. § 706(2)(D).

### FOURTH CLAIM FOR RELIEF
### FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION
#### (Against Defendants EEOC and PATEL)

79.     Plaintiffs incorporate paragraphs 1 through 78 by reference, as though fully set forth in this paragraph.

80.     The Fourth Amendment to the United States Constitution states:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…."

81.     The action by the EEOC and PATEL in distributing the mass business email and Internet link to CNH employees through the unauthorized use of the computer network of CNH for the purpose of attempting to unearth class action plaintiffs adverse to CNH was an unconstitutional trespass on, and thus an unreasonable search and seizure of, CNH's computer network property.

82.     The action by the EEOC and PATEL in distributing the mass business email and Internet link to CNH employees violated the EEOC's statutory mandate and its own Compliance Manual, as well as the governing Rules of Professional Conduct, further showing the unreasonableness of the EEOC and PATEL.

83.     The EEOC and PATEL violated CNH's rights under the Fourth Amendment to the United States Constitution.

## FIFTH CLAIM FOR RELIEF
## FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (Against Defendants EEOC and PATEL)

84.     Plaintiffs incorporate paragraphs 1 through 83 by reference, as though fully set forth in this paragraph.

85.     The Fifth Amendment to the United States Constitution states: "No person shall . . . be deprived of . . . property without due process of law; nor shall private property be taken for public use, without just compensation."

86.     The action by the EEOC and PATEL in distributing the mass business email and Internet link to CNH employees through the unauthorized use of the computer network of CNH was a taking of CNH business email domains without compensation.

87.     The EEOC and PATEL violated CNH's rights under the Fifth Amendment to the United States Constitution.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs pray for the following relief:

1.     A declaratory judgment that the action by the Defendants EEOC and PATEL to distribute the mass business emails to CNH employees, including managers and those who might legally bind CNH, through the unauthorized use of the computer network of CNH, violated the APA and the United States Constitution;

2.     A permanent injunction prohibiting Defendants EEOC and PATEL from taking any action to distribute a business email to CNH employees, including managers and those who might bind CNH, through the unauthorized use of the computer network of CNH or its affiliated companies;

3.      A permanent injunction ordering Defendants EEOC and PATEL to deliver to CNH all information gathered through their illegal mass business email distribution;

4.      A permanent injunction prohibiting Defendants EEOC and PATEL from disclosing to any third party any information gathered through their illegal mass business email distribution;

5.      A permanent injunction prohibiting the Defendants EEOC and PATEL from utilizing in any manner the information gathered through its illegal mass business email distribution (including information gathered through web-based questioning) in any subsequent lawsuit the EEOC may commence against CNH;

6.      An award of attorney's fees and costs to CNH; and

7.      Such other and further relief that the Court deems appropriate.

Dated:  August 1, 2013                    Respectfully submitted,

                                          CASE NEW HOLLAND, INC.
                                          CNH AMERICA LLC


                                          By: /s/ Taron K. Murakami
                                          Alan I. Baron (D.C. Bar No. 340273)
                                          abaron@seyfarth.com
                                          Taron Murakami  (D.C. Bar No. 499300)
                                          tmurakami@seyfarth.com
                                          SEYFARTH SHAW LLP
                                          975 F Street NW
                                          Washington, DC  20004-1454
                                          Telephone:  (202) 463-2400
                                          Facsimile:  (202) 828-5393


                                          Mark Casciari (to be admitted *pro hac vice*)
                                          mcasciari@seyfarth.com
                                          Laura Reasons (to be admitted *pro hac vice*)
                                          lreasons@seyfarth.com
                                          SEYFARTH SHAW LLP
                                          131 South Dearborn Street, Suite 2400
                                          Chicago, IL  60603
                                          Telephone: (312) 460-5000
                                          Facsimile: (312) 460-7000


                                          *Counsel for Plaintiffs Case New Holland, Inc.*
                                          *and CNH America LLC*